WILLIAM CLARK, one of the executors of Isaac Clark, deceased, appellant, and GEORGE G. HORNBECK, respondent.*

1. The loss of an instrument upon which a party seeks to recover, may be proved by presumptive evidence. Proof that the paper cannot be found, due diligence having been used in searching for it, is sufficient to raise the presumption of loss, and let in evidence of its contents.

2. All that the law requires as a ground for the admission of secondary evidence, is a reasonable assurance that evidence of a higher nature is not withheld or suppressed by the party offering it.

3. A party will not be presumed, in the absence of all evidence of the fact, voluntarily to have destroyed an instrument which he was interested in preserving. As a general rule, the legal presumption arising from proof that it cannot be found, is that it is lost.

4. Where it does not appear whether a lost note was, or was not, negotiable, it will not be presumed to have been negotiable; or, if negotiable, that it has been endorsed in blank.

5. An executor will be charged in his account with the amount of a note against himself, set down in the inventory, and alleged to have been lost or destroyed by the testator in his lifetime, where the existence, amount, and loss of the note are satisfactorily proved, and where there are no circumstances sufficient to raise the presumption that the note was intentionally destroyed by the testator.

---

*Mr. McCarter,* for appellant.

The question in this case is whether there was sufficient evidence to justify the court in charging William Clark, the accounting executor, with the note in question. The case

---

* A re-hearing was granted the appellant, after the delivery of the opinion reported here. But the Ordinary being of the same mind, after a careful consideration of the arguments upon the re-hearing, the decree of the Orphans Court was affirmed. The opinion, therefore, follows the arguments of counsel upon the re-hearing.

may be treated precisely as if William Clark were a stranger to the testator, i. e., not an executor, and the executors of deceased were sueing him for the recovery of the note in question.

As much evidence will be required to charge the executor in a controversy of this kind, as would be necessary to recover in a suit at law upon the note, in case the executors were plaintiffs, and William Clark defendant.

It is hardly necessary to premise, that in such a suit the plaintiffs would have to establish an existing liability at the time of the commencement of the suit, or be non-suit. Until that is done, the defendant cannot be called on for any defence. *That* the plaintiffs must show by evidence which, if un-contradicted or unexplained, would be sufficient, before defendant need make any answer, defence, or explanation. Ordinarily that is done by the plaintiff's producing the note and proving its due execution. The proof of its execution, establishes the fact that a liability *then* existed; the production of the note in the possession of the plaintiffs, on the trial, raises the presumption that the liabilty still exists un-changed, and throws upon the defendant the *onus* of discharging himself therefrom.

"The presumptions are all in favor of *the holder* of negotia-ble paper. *Prima facie*, the party in possession is a *bona fide* holder for value, and the owner of the paper; and the pre-sumption is so strong, that though the pleadings put the title in issue, it will not be overcome by proof that the plain-tiff acquired the note after due." *Edwards on Prom. Notes* 679, *note* 4; *James* v. *Chalmers*, 2 *Selden* 209.

In *Holme* v. *Karsper*, 5 *Binney* 469, Ch. Justice Tilgh-man says: "In the first instance it is presumed that every man acts fairly. It lies on the defendant, therefore, to show some probable ground of suspicion, before the plaintiff is ex-pected to do anything more than *produce the note* on which he founds his action."

So too, "when there is a competition of evidence upon the question whether the security has been satisfied by payment

it has been held that *the possession of that security by the claimant* ought to turn the scale, and entitle him to a verdict." *Chitty on Bills* 425. " And if, for want of distinct evidence of a payment, it should be in doubt whether it was made, the mere circumstance of the instrument not having been given up, will afford a presumption against the party who alleges he has paid it." *Ibid.* 394.

From these and numerous other authorities which might be cited, it abundantly appears that the possession and production of the note by the plaintiff, is the *controlling circumstance* upon which are founded all the presumptions necessary to show that the note remains an existing claim against the defendant. If that circumstance is wanting, all the presumptions built upon it must also be wanting.

If the plaintiff cannot prove the continued existence of the liability, by producing the note, he must prove it in some other way equally satisfactory. He is still imperatively required to prove the two requisites to a recovery. 1. The original existence of the debt or liability. 2. That it continues at the time of the suit brought.

It is perfectly manifest that evidence which may be legal and competent, and sufficient to prove the first of these two propositions, may come entirely short of proving the other. For instance, to establish the first requisite, the plaintiff must prove, 1. The existence of the note. 2. Its contents. The first may be proved by parol; the second ordinarily must be proved by the production of the instrument itself. If that cannot be done, then, in order to admit secondary evidence of the contents, " all that the law requires as a ground for the admission of secondary evidence, is a reasonable assurance that evidence of a higher character is not withheld or suppressed by the party offering it."

Greenleaf says: "The question whether the loss of the instrument is sufficiently proved to admit secondary evidence of its contents, is to be determined by the court, and not by the jury. But it seems that, in general, the party is expected to show that he has in good faith exhausted, in a rea-

Clark *v.* Hornbeck.

sonable degree, all the sources of information and means of discovery which the nature of the case would naturally suggest, and which were accessible to him. It should be recollected that the object of the proof is merely to establish a reasonable presumption of the loss of the instrument; and that this is a preliminary inquiry, addressed to the discretion of the judge." 1 *Greenl. Ev.*, § 558.

Those requirements are all met in this case. It is perfectly manifest, that these executors have not the power to produce this note, because all parties admit that they never had it in their possession. If William Clark should be foolish enough to contradict that, the court could not, in the exercise of a sound discretion, admit secondary evidence to show what the contents of that note were when it existed. The obvious answer to his contention would be, "you admit that plaintiff cannot produce the note; your whole standing in court, and your whole defence, rests upon the supposed inability of plaintiff to produce the note. It does not lie in your mouth to deny that the reason for admitting the secondary evidence is wanting, when your whole insistment and defence rest upon the fact that they cannot produce the note. With what propriety or consistency can you, with one breath, say to the plaintiff, you cannot produce any such note against me, and with the next insist, you cannot give secondary evidence of its contents, until you have first shown that you cannot produce it?"

So far, therefore, as the question whether this is a proper case for the admission of secondary evidence of the contents of the note is concerned, the reasoning and authorities contained in the Ordinary's opinion in this case, as well as the facts of the case, and the dictates of common sense, all abundantly show that secondary evidence of the contents of the note was rightfully admitted, and that whatever facts such secondary evidence sufficiently establishes, must be taken to be true in the case.

What facts then are established by the evidence? Nothing more than that the appellant's note once existed, that its

contents were such as the secondary evidence describes, and that at the time it so existed, it was held as a subsisting liability against him by the testator.   And it may as well be added here, that the testimony brings down the continued existence of that state of facts, until the time testified to by Isaac Hornbeck, viz. one or two years before testator's death.

Admitting those facts in their fullest extent, (and they have never been denied by the appellant), do they establish any thing more than the first requisite to a recovery, viz. that the appellant's liability to the testator once existed? Does the proof of those facts establish, or tend to establish, the second requisite, viz. that such liability continued until suit brought, or rather until the testator's death? (which, in this case, answers to the commencement of a suit on the note).

We contend that such second requisite remains unproved.

It will not do to say, that having once established the existence of a liability, the law presumes that it continues until it is shown to have been discharged.   If all the circumstances remain the same, the presumption would naturally arise.   And if this note had been shown to have been in testator's possession, or among his papers, at or after his death, the rule would apply.   But here the circumstances do not remain the same.   The only evidence of the existence of the liability was the note.   As long as the note exists, the law presumes that the fact, of which its existence was *prima facie* evidence, also exists.

The existence of the note is, as I have shown above, the controlling circumstance on which the presumption is founded. If that circumstance is wanting, what becomes of the presumptions founded on it?   They must certainly vanish with it.

The second proposition then still remains to be proved, viz. that the indebtedness, of which the note in question was the evidence, continued until the testator's death.

The respondent cannot show it by the production of the note, or by proof of its existence up to the testator's death.   He

must prove that proposition by some other evidence, or fail of a recovery.

It is not pretended by respondent's counsel, nor can I see that it is claimed in the opinion of the Ordinary, that any direct evidence of that proposition has been offered. If, then, respondent cannot offer direct evidence of the fact, he must restore or bring back the presumptions which arise out of the production of the paper, by showing that such production, in this particular case, has been prevented by circumstances which show that the liability still continues, to the same extent as if the paper had been produced.

Just here comes in the distinction which exists between the amount of proof required to lay the foundation for secondary evidence, and that required to prove our second proposition.

In the one case, the party need only show that it is not in his power to produce the paper. In the other, he must go further, and show *why* it is not in his power. The one is a question addressed to the sound discretion of the court, who only require to be satisfied that "evidence of a higher nature is not withheld or suppressed by the party offering" the secondary evidence. The other is a fact to be proved affirmatively to the jury, like the execution of the note, or its contents, or any other fact on which the plaintiff's action depends. On this point the jury, or the court occupying the place of a jury, has no discretion; it must be proved to their satisfaction by the weight of the evidence, or the case must fail.

If, therefore, the party relies upon the fact of the *loss* or *accidental destruction* of the paper as the ground-work on which he would base the presumption of the continued existence of the liability of which the paper was the evidence, he must show the fact of the loss or destruction of the paper affirmatively. He must show something more than his mere inability to produce, because while that inability, standing alone, may be sufficient to assure the court that he does not keep back or suppress the original, it is not sufficient to show its loss or destruction, because *non constat,*

but that the inability to produce the note arises from its having been paid, or from its intentional destruction by the holder, or from its having been voluntarily given up by the holder to the maker, and destroyed by him, as it is quite common for the maker of a note, having paid it or taken it up in any way, to destroy it. He has a right so to do, and to rely upon what has always been understood to be the law, that before a note can be recovered upon, the party seeking to recover must either produce the note, or prove circumstances which are equivalent to its production, something to rebut the natural presumption of payment or satisfaction, which arises from the fact that the plaintiff once had a note, and that he now cannot produce it.

The usual and regular course of business is, that when a man no longer holds a note as a claim against the maker, he gives up the possession of it to the maker. That state of things happens one hundred times, where the accidental loss of a note happens once.

If any presumption arises from such a state of facts as this, it would be, not that the note was lost or destroyed by accident, but that it was paid, or in some other way satisfied to the holder, and given up by him. The presumption would certainly be in accordance with the usual course of business, rather than in favor of an accident.

The cases cited in the opinion of the Ordinary, in support of the position that presumptive evidence of loss is sufficient, were all decided on the question as to how much proof of loss was sufficient to lay a foundation for the introduction of secondary evidence, *and for that purpose* they sustain the position that mere presumptive evidence of the loss is sufficient.

In *Minor* v. *Tillotson,* 7 *Peters* 99, the missing paper was a grant to Wade Hampton, of a tract of land in Louisiana, which, as the plaintiff claimed under W. H., became one of the evidences of his title. The point in that case, was that W. H. himself was not sworn to prove the loss, but that sec-

ondary evidence was admitted on proof of a search of his papers by plaintiff's attorney. The court held, under the circumstances of that case, that it was not necessary to swear Wade Hampton to the fact of the loss; putting their decision upon the ground that the examination made of the papers of W. H., was all that W. H. could have made himself, and that it was a very odd document *and that there did not appear to be any ground for supposing that the deed was designedly withheld.*

Suppose, however, that Wade Hampton himself had been the plaintiff in that suit, and the only evidence of his title had been the missing deed, would the court have permitted him to offer secondary evidence of its contents, by his merely proving that his attorney had examined his papers and could not find the deed? Would not a court require imperatively that W. H. should be sworn to prove the loss himself? If not, then the supposed necessity which has always been urged as the reason for permitting a party to be sworn in his own case for that purpose, proves to be no necessity after all. If then W. H., under those circumstances, could not have given secondary evidence of his deed, without first having sworn, himself, as to the loss, much less would he be permitted to recover on a lost note, of which he was the holder, without as stringent proof of the fact of the loss.

A deed once given vests the title, and no subsequent loss of the deed, nor its voluntary destruction by the grantee, nor its re-delivery to the grantor, nor the re-payment of the consideration money, will divest the title; that can only be divested by a conveyance sufficient to divest it. Such is not the case with a note. There the presentation of the paper is essential to the continuance of the liability; its voluntary destruction by the holder, or the receipt of the money for which it was given, or the voluntary giving it up to the maker by the holder, terminates the liability of the maker.

Once prove that a deed existed and conveyed the title, and you are not bound to produce it to show a continuance of the title. The title continues by virtue of the deed until it is

2 o*

conveyed again, no matter what becomes of the paper which is the evidence of the title. Inasmuch, therefore, as the same inducement does not exist for the preservation of a deed, that does for the preservation of a note, the presumption of its accidental loss or destruction would be raised on much less evidence than in case of a note.

The case of *Caufman* v. *Congregation of Cedar Spring*, 6 *Binney*, *p.* 59, was also a question of the admissibility of secondary evidence. The court premised in that case, that " *to make way for such evidence,*" the loss of the paper " may be proved by circumstantial evidence."

The objection there was, that the party in whose custody the paper ought to be, and who assisted in the search for it, was not sworn. The missing paper in that case was an article of agreement, under which the holder claimed no rights, but of which he was a mere depositary. Ch. J. Tilghman says, in that case, " if this writing had been in the custody of the plaintiffs themselves, it might have been reasonable to hold them *to very strict proof of its loss or destruction.* But considering that it was no more in their hands, than in those of the opposite party, I am not disposed to differ from the opinion of the court of Common Pleas." He also based his opinion of the legality of the admission of the secondary evidence in that case, in part upon the fact that Sanderson was a competent witness for the defendant, and if he suspected collusion or a suppression of the paper, he had a right to examine him on oath.

In the case of *Taunton Bank* v. *Richardson*, 5 *Pick.* 436, the missing paper was a letter, by which it was insisted the defendants had waived notice and demand, on the maturity of a note.

The court in that case, held, what is not denied here, that in order to lay the foundation for secondary evidence, it is not necessary to prove the " absolute irrecoverable loss of the paper itself, by fire or some other destructive agent." They

hold that the fact of the loss may be proved by presumptive evidence, "like any other fact." In that case, the secondary evidence was held to have been improperly admitted.

The question here, is not whether the fact of the loss may or may not be proved by presumptive evidence. Admitting for the sake of the argument that it may, the question still recurs, does the evidence that a note once held by a deceased person cannot, after a lapse of a year or two, be found among testator's papers by his executors, raise any presumption whatever of the accidental loss of the paper, in preference to the presumption that it had been paid or otherwise satisfied, or voluntarily given up to the maker by the holder?

In *Jackson* v. *Neely,* 10 *Johns. R.* 374, the missing paper was a power of attorney, under which a deed had been executed. In that case, the party to whom the power had been executed, and in whose custody it should have been, testified that he could not find it, and that he had no doubt he had destroyed it as a paper of no value.

The deed executed in pursuance of it had long been recorded, and the power was vested in the deed. Under these circumstances, the court very properly held, that there was sufficient evidence to raise a presumption of loss, so as to justify the admission of the secondary evidence.

In *Turnipseed* v. *Hawkins,* 1 *McCord* 272, the paper was a deed, which also had long been on record, and no one was disputing the title under it, and it was very doubtful, under the South Carolina statute, whether the copy of the record was not primary evidence, without any proof of the loss.

It will be observed that in all these cases, the question was as to the admissibility of secondary evidence, and that in none of them was the instrument the foundation of the action, nor was the instrument of such a character that its non-production deprived the party of any right, or of the benefit of

any presumption arising from the production of the paper. In all the cases the question was an incidental one, addressed to the court, and not to the jury.

*Greenleaf*, § 558, above cited, says, that in such cases "the object of the proof is merely to establish a reasonable presumption of the loss of the instrument," which is a very different thing from proving the loss, as one of the steps in the cause without which the plaintiff must fail in his action.

After a most diligent and careful search of the authorities, I have been unable to find a single case where, in an action by executors to recover on a lost note, the mere fact that the note could not be found among testator's papers after his death, was any evidence of its loss, when there was no proof of the note having had any existence for more than a year before testator's death. That *hiatus* in the history of the paper, must in some way be supplied.

Suppose Isaac Clark were living, and suing on the note, and he should prove that he held such a note some one or two years before he brought the suit, and then should prove by a witness that he (the witness) had examined plaintiff's papers, and could not find the note, would the court be satisfied with such evidence? Would it not be required of him to swear that he had lost it? Much less would he be allowed to recover on the note, unless he satisfied the jury of something more than the mere fact that on a search among his papers it was not there.

If, then, Isaac Clark were here himself, and would not be permitted to recover on such proof, how can the executors recover? Can they, or ought they to recover in the action, on less proof than that which would have entitled the testator to recover, if living? I know it may be said that the adoption of the rule contended for by me, would make it difficult, if not impossible, for an executor to recover on a lost note. Grant that to be so, for the sake of the argument, and does it justify a court in changing well established rules of law, or in inventing new ones, to save executors from the

consequences of the negligence, carelessness, or improvidence of their testators?

The death of a man always places his executors in a worse position to conduct a litigation about the estate, than the man himself would have been if he had lived; but was that circumstance ever before urged as a reason why executors are permitted to prove facts by evidence which would not be sufficient to maintain the action or defence if the man were alive?

Where is the authority for the doctrine, that because it is not so easy for an executor to prove a fact necessary to an action or defence, as it would have been for the testator, that, therefore, less proof is required; or that because it is impossible for an executor to prove an indispensable fact, therefore it will be presumed, and he need not prove it at all.

It is always one of the unfortunate incidents attending a man's death, that if a controversy arises about his estate, the executors are ignorant of important facts, a knowledge of which would have settled the controversy in favor of the estate, and the evidence of which could easily have been found by the testator; but I never heard it urged, that for that reason any less proof was required of the fact to be proved by the executors.

Suppose an executor was sued for a book account debt of his testator. If the testator were living, he might be able to produce a receipt for it, or a witness who was present when it was paid, of which fact the executor may be entirely ignorant. And yet the executor who sets up payment, is not absolved from the necessity of proving it to the satisfaction of a jury, by the difficulties which surround him. Was it ever argued, that because it is difficult to prove payment, therefore less proof is required than otherwise; or that in such case, anything which would come short of proving the issue on his part would suffice? If that were so, it is easy to see that a man's estate is placed in a better position by his death, and that suits or defences, which the man himself could not have maintained if living, can easily be supported

by his executor after his death, which would be absurd. The establishment of such a rule would offer a premium to carelessness, and would encourage men to postpone the settlement of all their important business until after their death, in the hope that presumptions would be raised in favor of their executors, which could not be invoked for themselves if living.

If, in this case, there was any evidence to warrant the presumption of loss, there might be a greater show of plausibility for the doctrine. If there was the slightest proof that Isaac Clark ever searched for the note, or complained of having lost it, or after the time when the note was last seen, ever claimed that William owed him anything on account of it, there might be some argument made in favor of the presumption of its loss, but not a syllable of such testimony is produced.

On the contrary, it is abundantly proved, that after the note was last seen, the testator executed to William a bond and mortgage for a debt of $800, owing on the purchase of Benjamin's farm, without claiming any off-set or allowance for the debt now in controversy, which he would hardly have done, had he then held a note against William for more than the sum for which he gave a mortgage. If he had held such a note, would he have urged James Clark to take the farm and pay the debt to William, when he held in his own hands a note that would have more than paid it?

If, as is truly stated in the opinion of the Ordinary, as between the executors of a father and a son, slight circumstances are sufficient to raise the presumption of the intentional destruction of the note, are not the circumstances above adverted to, and some of which are undisputed, amply sufficient for that purpose?

Nor is the executor without a remedy in a case of this character. He can file a bill for discovery against his coexecutor, and prove by him, (if the fact be so,) that the liability on the note continues, notwithstanding his inability to produce it; or in this very case, he can ask the court to put the accounting executor on oath to the same point. But if he will do neither, but, on the contrary, objects to the court's

examining the executor about it, with what propriety can he ask the court to decide a case of this kind on mere presumptions, when he, at the same time, closes the door to the only direct evidence which can now be had on the question?

On the other hand, the establishment of the doctrine contended for by the respondent, would be fraught with the most dangerous consequences.

In such an event, all an executor would have to do would be to prove that his testator once (at any time within six years and six months) held a note against a defendant, and that on testator's death it was not found among his papers, and it would be sufficient, not only to let in secondary evidence of its contents, but to establish it as a debt against the defendant, unless he could prove it paid, which in most cases he would be unable to do, being deprived by the rules of law, of his own evidence.

Another consequence of the doctrine would be, that an executor, in all cases where he knew, or had reason to believe, that his testator had, within the time of limitation, held a note against an individual, would be in duty bound to put such a claim on the inventory and endeavor to collect it, and put the maker of the note to the proof of payment, thus subjecting estates to frequent lawsuits, in many cases fruitless, and in cases where they are successful, subjecting a defendant to an unjust recovery, from a failure or neglect to preserve the note which he had paid off, and which he was under no obligation to preserve.

Although the Ordinary, in granting this re-hearing, confined the discussion to the questions of law involved in the case, I cannot, with justice to the appellant or to his counsel, pass over, without notice, one question of fact which seems to be assumed in the opinion, and on which are based many of its conclusions.

I allude to the allegation in the early part of the opinion, that "*it is admitted that the note has never been paid,*" and to the further statement near the close, that "it is shown that the appellant acknowledged, both before and after the death

of the payee, that he had given the note, that *he had never paid it, and his willingness to pay it whenever produced."*

That he gave the note he never denied. His counsel never intended to admit that the note has never been paid, and they have been most unfortunate, to say the least, if they have uttered anything to lead the Ordinary to that conclusion.

The only declaration William Clark is proved to have made about having paid the note, is that sworn to by Wm. Wood, in which he said that he had paid some part of it, but would not tell him how much.

He did not, however, in any conversation, admit his liability on it, nor were his alleged promises to pay it if produced, anything more than mere banters or challenges to those who accosted him about the note, based upon his own knowledge of the fact that the executors could not produce the note against him.

He always threw himself upon what he supposed was a perfect protection to him, viz. that the note could not be produced, and it amounts to nothing more than saying, it will be time enough for me to defend myself when you establish a *prima facie* case by the production of the note.

*Mr. R. Hamilton,* for respondent.

The main point of objection to the allowance of the item of $950 against the account of Wm. Clark is, that the note given for it is not produced.

The note was given for money borrowed of his father, Isaac Clark, a number of years ago. As it was a matter between father and son, it is not probable that the note was a negotiable one; it was a mere memorandum or evidence of the debt. The real indebtedness was the money lent.

The note was shown, by the evidence of Isaac Hornbeck and David Thompson, to have been in the old man's possession to within a year of his death. As the note was long past due, and not shown to have been a negotiable one, no possible harm can arise to the accountant in not producing it.

But in cases where the note is the sole foundation of the

suit, the plaintiff being no party to the consideration, according to the authority cited by the opposite counsel, the object of the proof (to let in secondary evidence), is merely to establish a reasonable presumption of the loss of the instrument, and this is a preliminary inquiry addressed to the discretion of the judge. 1 *Greenl. Ev.*, § 558. There was abundant evidence given in this case, to raise such a presumption. It was a note left running a number of years; interest paid thereon occasionally.

There is no evidence in the cause, that the accountant ever pretended he had satisfied or paid off the note. After the old gentleman's death, diligent search was made among his papers for it. The accountant was one of the executors, having the custody of the papers, and present, handling the papers at the time of the examination; and against the protest of the other executors, tore up and destroyed papers, so that they could not be identified. The note could not be found, and it is put down upon the inventory as a note against the accountant, which was "lost or destroyed," and which inventory he verified by his oath.

This evidence, with other circumstances and evidence in the case, was abundant to raise the presumption of loss, and to account for its non-production.

The counsel for the accountant argues, with more ingenuity than soundness, "that the note was the only evidence of the existence of the liability, and that the liability could only continue while the note was shown to exist, and that as it was not proven to be in existence at the testator's death, the liability or indebtedness did not continue." No authority is given for this assumption, nor is any reason assigned; it is a naked proposition without support.

Why is it necessary to show the note in existence at the testator's death? Why not fix any other period as well? If the testator had lost or mislaid it in his lifetime, his executors, after his death, succeed to the same rights he had; if he could have maintained an action for the indebtedness, by establishing a reasonable presumption of its loss, so can they.

Because the first and best evidence of the indebtedness can not be produced, its absence being accounted for by evidence to establish a reasonable presumption of its loss, that does not prevent the indebtedness from being shown by secondary evidence, if it is within the power of the party to produce it.

In this case, where the indebtedness arose between the testator and accountant for money lent, and that being clearly shown, independent of the note, the only necessity for the production of the note, or of evidence accounting for its absence, was to satisfy the rule, that the best evidence which the nature of the case will admit of, must be produced; and to save the accountant from the possibility of any further claim upon it.

As before stated, the note not being shown to be negotiable, and being long past due, the accountant could sustain no injury by its non-production.

The counsel argues that the note not being produced, in order to recover upon it, its destruction, or its equivalent, must affirmatively be shown. *No authority* is shown for this assumption. The authority is to the contrary. 2 *Parsons on Notes and Bills* 290, 307; *Renner* v. *Bank of Columbia,* 9 *Wheat.* 581, 596.

Proof of loss is sufficient to support the action at law, on non-negotiable notes, without proof of destruction. 2 *Parsons on Notes and Bills* 289, 290. Presumptive evidence of the loss is sufficient. *Ibid.* 306. And in a note not negotiable, it is said, a court should be satisfied with slight evidence of its being mislaid. *Ibid.* 306.

The best evidence the nature of the case will admit of, to prove the loss, or account for its absence, is required; therefore the party holding the note, and claiming to recover upon it as a lost note, should be put upon the stand to testify. But this is not imperative; any one else who knows the facts, or in case of his death, his representatives, may make the proof. *Ibid.* 305.

The counsel argues that the non-production of the note is

presumptive evidence of its payment. Such is not the presumption of the law.

"It is not necessary for a creditor to prove that a debt evidenced by a lost paper is not paid. The *onus probandi* rests on him who alleges payment." 2 *Parsons on Notes and Bills* 307.

The counsel does not pretend, that it is to be presumed that a man would give away his debt or his note; that is a matter that would require affirmative proof, if set up.

In this case, the presumptions would all be against the accountant, that this note had ever been given to him. There was not the remotest reason for it. He was in better circumstances than the testator, or any of his other children, and had large claims against the testator. He resided away from the testator, and there were no reasons for any favoritism towards him, but to the contrary.

And as to any supposition of payment, it is ignored by all the evidence and facts in the case. He never pretended, so far as the evidence shows, that he ever paid it. It is put down upon the inventory as "*lost or destroyed*," which he *verified* by his oath, without alleging or pretending payment, and subsequently said he would pay it, if produced. He thought the non-production would screen him from the payment, and behind that quibble he placed himself. He, in fact, admitted it was not paid, or what was tantamount thereto, to Mrs. Wood, his sister. And on the occasion in Mr. Thompson's office; the circumstances attending the business there, instead, as the opposing counsel argues, of showing the testator had not the note at that time, proves, as we contend, very strongly, that Isaac Clark then had the note there, and waited a long time in the office for William Clarke to return, to get a settlement of the note with him.

It is true, that on that day, Isaac Clark executed a mortgage, by arrangement with the commissioners who sold the farm or lands of his deceased son, Benjamin, upon the lands for the purchase money, and the commissioners, in order to settle with the heirs of Benjamin, who were his surviving

brothers and sister, and sister's children, had a bond executed from Isaac Clark for each one's share, and among others, a bond for $800, to William Clark; this was a formal thing, and was a matter of settlement with the commissioners.

But to show there was a settlement to be made between Isaac Clark and William, and that Isaac Clark then held the note in question against William; on that same day, in order to meet the cash payment required by the commissioners, Isaac Clark received from William Clark (the accountant) $1700, which he claims in his account as executor, against the estate, for which he did not receive a scratch of a pen. He simply handed in the money to Mr. Thompson, for his father, without receipt, note, bond, or anything else.

Now if there was not a settlement to be made with the father, and that note to be accounted and paid out of this $1700, why leave it in this way?

The counsel argues, why would Isaac Clark give a bond to William, if he held the note? For the best reason in the world—because it was due to William, independent of the note. The $1700 which William that day let him have would meet the note, and more too, and may fairly be presumed as intended to be applied to the amount of the note. It is, in fact, an acknowledgment that the father had a claim to meet it.

The suggestion of the counsel for the accountant, that he should have been put upon the stand, after his rejection of his co-executor, Mr. John H. Wood, as a witness, upon the merest technicality, comes with bad grace. Mr. Wood was cognizant of all the matters between the testator and William Clark; was at Mr. Thompson's office at the time referred to, when the money was paid, and mortgage given, and then alleged, as Mr. Thompson testifies, that Isaac Clark was waiting to settle the note with William. Mr. Wood was also one of the executors, and assisted in examining the papers, and protested against the destruction William made of one or more of them at that time.

Clark v. Hornbeck.

THE ORDINARY. The appellant having exhibited his final account, as one of the executors of Isaac Clark, deceased, for settlement and allowance, exceptions were filed thereto by Hornbeck, the respondent. Upon the hearing of the exceptions, the court decreed that, in addition to the sum with which the accountant charged himself, he be charged with the further sum of $950, for a note set down in the inventory against accountant as lost or destroyed by the deceased in his lifetime, with interest on the note from the date of the inventory, amounting to $1116.35. From this decree the accountant appealed.

That a note for $950 was given by William Clark, the executor, to his father, the testator, is not denied. The evidence shows that the note was given several years before the testator's death, and that it was in existence until about the year 1859, or 1860. The testator died on the 27th of March, 1861. There is no evidence that it was in existence at the death of the testator, nor is it shown when, how, or by whom, it was either lost or destroyed.

The last time, so far as appears by the evidence, that the note was seen, was one or two years before the testator's death, when it was delivered with other papers by the witness to the testator, he being at the time in the company of his son, the accountant. The note is not traced to the hands of the accountant, nor is it shown that he at any time had the charge, custody, or control of his father's papers. It is admitted that the note has never been paid.

The only question is, whether the evidence before the Orphans Court was sufficient to justify the court in charging the accountant with the amount of the note.

It is urged, on the part of the appellant, that the judgment below is erroneous, inasmuch as the loss of the instrument upon which the recovery was sought, was not affirmatively proved.

The principle that the party seeking to recover upon a lost instrument must prove the loss affirmatively, is not questioned. But the rule does not require direct and positive evidence of

2 P *

the fact. The loss of a paper, as well as any other matter of fact, may be proved by presumptive evidence. Proof that the paper cannot be found, due diligence having been used in searching for it, is sufficient to raise the presumption of loss, and let in evidence of its contents. *Minor* v. *Tillotson,* 7 *Peters S. C. R.* 99 ; 1 *Greenl. Ev.,* § 558 ; *Taunton Bank* v. *Richardson,* 5 *Pick.* 441. The party by whom the loss is suffered, or through whose agency it occurred, though a party to the record, and directly interested in the event of the suit, (independent of the statutory provision, rendering interested parties competent witnesses,) was permitted to prove the fact of the loss. But competent proof of the loss is by no means confined to such direct testimony. So narrow a limitation of the rule, would necessarily defeat a recovery in all cases where a suit was brought by executors upon a note lost by the testator in his lifetime.

If the person to whom the paper belongs, or who by law has the custody of it, or to whom it has been entrusted by another, testifies that he has made diligent search for it where it was likely to be found, it is sufficient evidence of its loss.

So, proof of the destruction of a trunk containing the papers of a deceased person, or an unsuccessful search among the papers of the deceased by the executor or person having them in possession, affords presumptive evidence of loss, and justifies the admission of secondary evidence of the contents of a missing paper. *Jackson* v. *Neely,* 10 *Johns. R.* 374 ; *Cauf-man* v. *Congregation of Cedar Spring,* 6 *Binney* 59 ; *Turnip-seed* v. *Hawkins,* 1 *McCord* 272.

In *Sterling* v. *Potts,* 2 *South.* 776, and in *The Governor* v. *Barkley,* 4 *Hawks* 20, the objection was not that a search for a missing paper among the papers of a deceased party may not be satisfactory evidence of the loss, but the objection was, that the executor or administrator, who was the legal custodian of the papers, was not called.

All that the law requires, as a ground for the admission of secondary evidence, is a reasonable assurance that evidence

of a higher nature is not withheld or suppressed by the party offering it.

It is suggested that the evidence offered proves, either the loss of the note, or its destruction by the testator; and in case of voluntary destruction by the testator, secondary evidence of its contents is inadmissible. This objection presents the simple question, whether the legal presumption arising from proof that the paper cannot be found, is that the paper is lost, or that it has been intentionally destroyed? As a general rule, it is clear the legal presumption will be that the paper is lost. A party will not be presumed, in the absence of all evidence of the fact, voluntarily to have destroyed an instrument which he was interested in preserving. *Foster* v. *Mackay*, 7 *Metcalf* 537. If such were the legal presumption, no recovery could ever be had upon a lost paper, where the holder who suffered the loss was dead. The presumption of the voluntary destruction of the instrument would exclude all secondary evidence of its contents. *Broadwell* v. *Stiles*, 3 *Halst. R.* 58; *Vanauken* v. *Hornbeck*, 2 *Green's R.* 182; *Wyckoff* v. *Wyckoff*, 1 *C. E. Green* 401.

Where, as in the present case, the suit is brought by the executor of a father against a child, to recover upon a note alleged to be lost, slight circumstances would be sufficient to raise the presumption that the note was intentionally destroyed by the father to relieve the son from liability, in order to effect a distribution of the testator's estate among his children, in accordance with his wishes. But there is not the slightest circumstance in the evidence to give countenance to such a conclusion.

It is objected that the note may have been negotiated, and the court should have required that the appellant be indemnified against all further liability upon the note, before requiring him to pay it.

But there is no evidence that the note was negotiable. Where it does not appear whether a lost note was, or was not, negotiable, the court will not presume it to have been negotiable; or, if negotiable, that it has been endorsed in blank.

Clark *v.* Hornbeck.

*Pintard* v. *Tackington,* 10 *Johns. R.* 104; *McNair* v. *Gilbert,* 3 *Wend.* 344; *Edwards on Bills* 302; 2 *Parsons on Notes* 200.

The note is shown to have been in the hands of the payee, long after its maturity, and after a payment had been made upon it.

The existence, amount, and loss of the note, are satisfactorily proved. It is shown that the appellant acknowledged, both before and after the death of the payee, that he had given the note, that he had never paid it, and his willingness to pay it, whenever produced. I see no just ground upon which his refusal to pay it can be based. The mere fact that its precise date and terms are not proved, is not material. He is charged with interest only from the date of the inventory.

The costs were properly charged against the estate in the hands of the appellant. The burden does not fall upon him alone, but upon all the parties interested in the estate.

The decree is affirmed with costs.