MICHAEL FREEDMAN, PLAINTIFF, v. HYMAN COOPER, DEFENDANT.

Argued October 5, 1940—Decided January 25, 1941.

Before Justice CASE, as a single justice pursuant to the statute.

For the plaintiff-respondent, *Hodes & Hodes*.

For the defendant-petitioner, *Julius Kwalick*.

CASE, J. The matter comes up on defendant's petition and rule to show cause why the writ of execution issued

against the wages of the petitioner on May 16th, 1940, and the levy made in pursuance thereof should not be quashed and the plaintiff permanently restrained from taking further steps under the judgment.

On June 24th, 1933, plaintiff recovered judgment against the defendant in the amount of $6,071.38 for injuries suffered in collision with defendant's automobile. The complaint in the action recited that the plaintiff resided in the City of Newark, County of Essex, and made the allegations of negligence usual in automobile damage suits including *inter alia* the allegation that defendant's automobile was driven "in such other divers reckless, careless, willful, wanton and negligent manner as to evince a reckless disregard for human life and safety." Plaintiff's address as thus given was the only address known to the defendant, and the allegations of the complaint are the only information before me on the point that the defendant's tortious act was willful and wanton.

Defendant had been insured against liability by an insurance company to which the institution of the suit was reported. That company retained an attorney-at-law who filed an answer on behalf of the defendant. Before the matter was reached for trial the insurance carrier became insolvent, the defendant was not notified, the case was reached for trial and was undefended, and a default judgment was entered. The defendant was arrested on a *capias ad satisfaciendum* which at that time, July 5th, 1933, issued as a matter of course on a judgment sounding in tort. Defendant then proceeded under the Insolvent Debtors' act, filing a list of his assets and of his creditors. Plaintiff's attorney appeared therein and examined the defendant under oath. No assets beyond the amount of exemption were disclosed, and an order for defendant's discharge was entered. On April 16th, 1934, defendant filed a voluntary petition in bankruptcy, set forth the plaintiff's judgment as a liability and gave the plaintiff's name and address as above stated, namely, "Michael Freedman, Newark, N. J. Judgment and costs recovered in N. J. Supreme Court June 24th, 1933, $6,071.38." The discharge in bankruptcy was granted on July 16th, 1934. The discharge, according to the federal statute (section 17 of the

Bankruptcy act), was not effective against such provable debts "as * * * (2) are liabilities * * * for willful and malicious injuries to the person or property of another, or * * * (3) have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, unless such creditor had notice or actual knowledge of the proceedings in bankruptcy * * *." The federal statute further required, in section 7, subdivision 8, that the bankrupt should state "a list of his creditors, showing their residences, if known, if unknown, that fact to be stated, the amounts due each of them * * *," &c. On the return of the instant rule the plaintiff submits his affidavit (his signature being by mark) giving his street address as 133 Badger avenue, Newark, New Jersey, with the statement that he has lived there with his wife since 1918, that he has never received any notice from the bankruptcy court, that he did not see any advertisement pertaining to the bankruptcy, that he receives all mail addressed to him and that he is positive that if a notice had been sent by the bankruptcy court he would have received it.

The questions are: (1) Was the judgment one that by its nature was not subject to release by a discharge in bankruptcy? and (2) was the discharge ineffective against that judgment because of an insufficient address of the judgment creditor?

The introduction in evidence of the order of discharge in bankruptcy places upon the creditor the burden to show that because of the nature of the claim, failure to give notice or other statutory reason the debt sued upon was excepted from the operation of the discharge; *Kreillein* v. *Ferger*, 238 *U. S.* 21; 59 *L. Ed.* 1184. In *Tinker* v. *Colwell*, 193 *U. S.* 473; 48 *L. Ed.* 754, the United States Supreme Court held that the act of criminal conversation there in question was, within the meaning of the Bankruptcy act, a willful and malicious injury to the person or property of the person affected; nevertheless the opinion makes this reservation:

"It is not necessary in the construction we give to the language of the exception in the statute to hold that every willful act which is wrong implies malice. One who negli-

gently drives through a crowded thoroughfare and negligently runs over an individual would not, as we suppose, be within the exception. True, he drives negligently, and that is a wrongful act, but he does not intentionally drive over the individual. If he intentionally did drive over him, it would certainly be malicious."

In the State of Connecticut a general judgment or verdict for the plaintiff does not necessarily import willful and malicious injury as regards defendant's release by bankruptcy discharge even though the complaint alleges willful and malicious assault; *In re De Lauro,* 1 *Fed. Supp.* 678. The form of the complaint is not determinative of whether the case falls within the exception to the statute; *Ex parte Cote (Vermont),* 106 *All. Rep.* 519. In the present case the judgment could have been upon one or more of a variety of theories upon which the complaint was grounded, namely, that defendant's car was driven at an excessive rate of speed; that it was without brakes; that the car was not under proper control; that the car was driven without proper care and regard to the rights of the plaintiff, &c. In so far as I can determine from the proofs and papers before me the act upon which recovery was had was one of negligent driving, without the least intent to injure the plaintiff, and without that general disregard of human life which is sometimes interpreted as "malice." I am not disposed under these circumstances to hold that the judgment is for willful and malicious injuries. See *Damato* v. *Ambrose,* 122 *N. J. L.* 539. Because a bankruptcy schedule states the name of a creditor and gives a city, even a large city, as his address, without particularity of street or number, does not necessarily mean that the creditor's debt is not duly scheduled. *Claflin* v. *Wolff,* 88 *Id.* 308. A schedule listing the creditor's residence as "Indianapolis" was held *prima facie* sufficient; *Kreitlein* v. *Ferger, supra.*

The courts would not, I assume, tolerate a purposeful insufficiency in the address of a creditor as a means of withholding from him notice of the bankruptcy. But the whole information had by the defendant was that which the plaintiff himself had given in the complaint filed in the law action which led to the judgment and that address, so far as it went, was

correct. Notwithstanding plaintiff's affidavit that he never received any notice from the bankruptcy court, it is by no means certain that the notice was not delivered at his address. We must assume that the referee in bankruptcy fulfilled his duty and sent the notice. There is no proof that the notice came back to him undelivered. Plaintiff's signature to his affidavit is by mark, indicating a degree of ignorance which may include the inability to read. The notice circulated by the referee, if in the form put before me, was a small printed slip; just what the reaction of a person who could not read would be to the receipt, through the mail, of a rather undistinguished printed slip I do not know. Plaintiff's own statement is very meager and is not amplified by other testimony in this respect.

I am led also to wonder what course of action would likely have been pursued by the plaintiff had he received the notice. What would he or could he have done? Raised the question of the nature of the judgment? He has done that, unsuccessfully, here. Disputed the schedule of assets? The value of the defendant's property had, by the insolvency proceedings, been shown as within the $200 exemption. Plaintiff had, through his attorney, appeared and participated in that proceeding. Why litigate that issue in another form? On both questions I am left in doubt as to the soundness of the plaintiff's position. The burden is upon him.

The writ of execution and the levy made thereunder will be quashed, and the rule to show cause will, in the remaining respects, be made absolute.