LLOYD B. KELLAM, GENERAL ADMINISTRATOR OF THE ESTATE OF ELMER DUTTON, DECEASED, PLAINTIFF-RESPONDENT, v. AKERS MOTOR LINES, INC., AND RUFUS VINCENT, DEFENDANTS-APPELLANTS.

LLOYD B. KELLAM, ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF ROBERT ELMER DUTTON, DECEASED, PLAINTIFF-RESPONDENT, v. AKERS MOTOR LINES, INC., AND RUFUS VINCENT, DEFENDANTS-APPELLANTS.

GEORGE R. MAPP, JR., TRADING AS GEORGE R. MAPP AND COMPANY, PLAINTIFF-RESPONDENT, v. AKERS MOTOR LINES, INC., AND RUFUS VINCENT, DEFENDANTS-APPELLANTS.

Submitted February 16, 1945—Decided April 19, 1945.

For the defendants-appellants, *Bennett Clark* and *Benjamin F. Friedman.*

For the plaintiffs-respondents, *Horace G. Brown.*

The opinion of the Court was delivered by

DONGES, J. The defendants appeal from three judgments against them entered in the Supreme Court after a trial at the Burlington Circuit before Judge Burling. The suits arose out of a collision between a truck owned by the defendant Akers Motor Lines, Inc., and driven by the defendant Rufus Vincent, and a truck owned by the plaintiff George R. Mapp, Jr., and driven by one Robert Elmer Dutton. The plaintiffs are Mapp in one suit, Lloyd B. Kellam, as general administrator of Dutton, in another, and Kellam, as administrator *ad prosequendum,* in the third.

The collision occurred at the point where State Highway Route 25, from Camden to Trenton, is intersected by the Riverside-Moorestown road at Bridgeboro. The accident occurred shortly before eight o'clock on the morning of November 6th, 1943. It was a foggy morning with visibility poor. It was dark enough to require lights on vehicles. The first accident was a collision between a milk truck and a passenger vehicle as a result of which the passenger car ran off the road, struck the porch of a dwelling on the northeast corner of the intersection and burst into flame. One McKenny, driving a truck in a northerly direction and seeing the flames, pulled his truck to the right, off the concrete onto the gravel shoulder of the road, and stopped. The Mapp truck, driven by Dutton, approached also going northerly and stopped beside the McKenny truck. This meant that it was on the concrete portion of the highway and some witnesses said it was in both of the two north-bound lanes. This truck consisted of a tractor and a dolly, and was loaded with nine poles varying in length from 50 to 54 feet. Very shortly after it stopped the defendants' truck came along and ran into the rear of the poles, driving one or more of them through the cab of the tractor and inflicting the fatal injuries on Dutton. Dutton's helper had alighted to go to the fire and thus escaped injury. The truck itself was driven ahead and, it was said, struck a fire engine.

The issue was the negligence which was the proximate cause of the collision, whether it was that of defendant Vincent or that of the decedent, or both. The defendants filed

counter-claims and the trial court submitted the whole matter to the jury. There were conflicts in the testimony respecting the lights upon the parked truck and the speed and course of the defendants' truck.

The defendants-appellants argue sixteen specifications, as they are called. The first has to do with the admission in evidence of a photograph of the scene of the accident, *P-2*. The photographer who took it was not produced, but the witness Pfau who lives near the scene testified that it truly depicted the scene of the accident. It seems to us that the photograph was sufficiently proved as an accurate picture of the *locus*. Furthermore, it does not appear, nor does counsel point out, in what respect the appellants were harmed by it.

The next point concerns a question asked a member of the State Police as to whether or not, on the day of the accident, the defendant Vincent had entered a plea of guilty to a charge of reckless driving. The objection was based upon the grounds, first, that it was a leading question, which is no ground for reversal, that being a matter of discretion; second, that negligence must be established independently in the case on trial, which is true but does not preclude admissions against interest; and third, that the testimony of a witness is not the best evidence of such a situation, the records of the magistrate being required. The witness who heard the defendant actually enter the guilty plea is competent to testify to what he heard the defendant say, so there was no error.

The third point is that it was error to permit the same witness to use a stenographic transcript of a statement made by the defendant Vincent in testifying to what Vincent had said on that occasion about the accident. The witness used the statement to refresh his recollection. The long established rule is, "If upon looking at any document he can so far refresh his memory as to recollect a circumstance, it is sufficient; and it makes no difference that the memorandum is not written by himself, for it is not the memorandum that is the evidence but the recollection of the witness." *Henry* v. *Lee*, 2 *Chit*. 124; *Marti* v. *Standard Fire Insurance Co.*, 127 *N. J. L.* 591; *Wigmore on Ev.*, ¶ 759. Further, there was no harm to defendants because the statement itself was

later read to the jury by the stenographer, without objection by the defendants.

The fourth and fifth specifications have to do with the refusal to nonsuit and to direct verdicts in favor of the defendants. A reading of the testimony leads to the conclusion that questions of fact were presented which were properly submitted to the jury. The jury might well have found that the decedent was guilty of negligence in stopping his truck where he did or that the truck was not sufficiently lighted, but in view of all the proofs, these questions, as well as the question of negligent operation of the defendants' truck, were factual matters, and the motions were properly denied.

The sixth point is that there was no testimony concerning the life expectancy of the decedent and his next of kin. There is no ground of appeal touching this subject, nor was there any judicial action by the trial court regarding it which is pointed out and to which an exception was taken.

The remaining specifications have to do with the refusal of the court to charge certain requests to charge. All of them are rather long and involved and are based upon provisions of the Traffic Act. The court charged at some length upon the Traffic Act, reading many sections *verbatim,* and properly told the jury of the effect of evidence of a violation of the act as bearing upon the question of negligence. There were no exceptions to the charge. We are of the opinion that the subject-matter of the requests, in so far as it was proper, was sufficiently covered in the full and complete charge of the court and that there was no prejudical error in the refusal of the court to charge in the language of the requests.

The judgments are affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER. COLIE, WELLS, RAFFERTY, THOMPSON, DILL, FREUND, JJ. 15.

*For reversal*—None.