28 N.J. Super. 144 (1953)
100 A.2d 349
MARY WEGIEL, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATES OF VINCENT WEGIEL AND MICHAEL WEGIEL, DECEASED, PLAINTIFF-RESPONDENT,
v.
FRANCIS P. HOGAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 21, 1953.
Decided October 26, 1953.
*146 Before Judges CLAPP, GOLDMANN and EWART.
*147 Mr. Horace G. Davis argued the cause for appellant.
Mr. Leo S. Sullivan argued the cause for respondent.
The opinion of the court was delivered by EWART, J.A.D.
The principal question presented for determination by this appeal is whether or not defendant's discharge in bankruptcy operates to release and discharge a judgment theretofore secured by plaintiff in her representative capacity against the defendant.
The pertinent section of the National Bankruptcy Act upon which defendant relies reads:
"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowed in full or in part, except such as * * *; (2) are liabilities for obtaining money or property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another, * * *." 11 U.S.C.A., § 35 (Emphasis supplied).
It is well established that when it once appears that a judgment debtor has received a discharge in bankruptcy, the judgment creditor carries the burden of showing that the judgment has not been released by the discharge in bankruptcy, but that the liability upon which the judgment rests falls within the description of one of the exceptions contained in the bankruptcy statute. Damato v. Ambrose, 122 N.J.L. 539 (Sup. Ct. 1939); Freedman v. Cooper, 126 N.J.L. 177 (Sup. Ct. 1941); Rosenthal v. Levin, 21 N.J. Misc. 301 (Circ. Ct. 1943).
And neither the form of the complaint nor the form of the judgment is finally determinative of the question of the nature of the claim upon which the judgment rests, but recourse may be had to the record for the purpose of determining the primary nature and real foundation of the cause of action upon which the judgment was entered. Ehnes v. Generazzo, 19 N.J. Misc. 393 (Com. Pl. 1941); Rosenthal v. Levin, supra; 6 Am. Jur., Bankruptcy, § 815; Annotation 109 A.L.R. 1192. The verdict and judgment being general in their terms, the record of the evidence presented *148 at the trial, which resulted in the judgment, is admissible in a proper case on the issue of the nature of the liability. 6 Am. Jur., Bankruptcy, § 815. Cf. Fidelity & Casualty Co. v. Golombosky, 133 Conn. 317, 50 A.2d 817, 819 (Sup. Ct. Err. 1946).
The bankruptcy statute, supra, uses the expression "willful and malicious injuries."
An act done intentionally and voluntarily is done willfully. Tinker v. Colwell, 193 U.S. 473, 485, 24 S.Ct. 505, 48 L.Ed. 754 (1904). The word "willful" is defined as voluntary; intentional. Webster's New International Dictionary (2d ed.).
Malice, in its legal sense, means a wrongful act done intentionally without just cause or excuse. Tinker v. Colwell, supra; Louis Kamm, Inc., v. Flink, 113 N.J.L. 582, 588 (E. & A. 1934); Louis Schlesinger Co. v. Rice, 4 N.J. 169, 181 (1950); Annotation 13 A.L.R. 2d 170-171. Intentionally to do that which is calculated in the ordinary course of events to damage, and which in fact does damage another, when done without just cause or excuse, constitutes a malicious wrong. Kinane v. Fay, 111 N.J.L. 553, 560 (Sup. Ct. 1933).
The factual background giving rise to the present litigation is disclosed in part by an "Agreed Statement in Lieu of Record" from which the following facts are gleaned:
On December 24, 1931 defendant operated an automobile on a public highway known as Avenue E, at or near its intersection with East 42nd Street, in the City of Bayonne, N.J. At that time and place plaintiff's intestate, Vincent Wegiel, was walking on the highway pulling or pushing a wagon containing wood, and at the same time and place his 14-year-old son, Michael, was also walking on the highway pushing a bicycle. Both the Wegiels were struck by the automobile operated by the defendant and both died as a result of their injuries then sustained. Letters of administration ad pros. upon the estates of Vincent and Michael Wegiel were taken out by the plaintiff and suit was instituted by the plaintiff under the Death Act to recover for the *149 pecuniary loss suffered by the widow and next of kin. In his answer defendant denied the allegation of negligence, including the alleged willful and wanton acts set forth in the complaint. The case was tried before a jury in the Hudson Circuit on September 19, 1934 and resulted in a general verdict against the defendant Hogan and in favor of the plaintiff administratrix for a total of $5,000 damages and dismissal of the complaint as against Patrick J. Harrold, owner of the automobile driven by the defendant Hogan. Proof at the trial as to the carelessness and negligence of the defendant Hogan was entirely circumstantial. There was testimony at the trial that the defendant Hogan had been drinking just prior to the occurrence of the accident. After the accident defendant Hogan did not stop his car but continued to drive for some distance away from the scene of the accident. On December 22, 1941, and again on August 21, 1946, orders were entered in this cause directing the issuance of wage executions against the salary of the defendant Hogan and under the latter wage execution, deductions have been made from Hogan's salary since 1946. On October 8, 1951 Hogan was adjudicated a bankrupt and received his discharge in bankruptcy December 31, 1951.
Further facts were developed in connection with defendant Hogan's motion for an order restraining further proceedings on the judgment after he had secured his discharge in bankruptcy. His motion was accompanied by a verified petition and in answer thereto, affidavits were filed by Stephen P. Piga, Esquire (now deceased), in which it was stated that he was the attorney who brought the original suit in this cause and who represented the plaintiff at the trial of the cause in 1934. The Piga affidavits assert that after the institution of the suit and prior to the trial, he served upon the defendant Hogan an interrogatory requiring the defendant Hogan to state whether he was the operator of the automobile involved in the accident on December 24, 1931, resulting in fatal injuries to the decedents Vincent and Michael Wegiel, and, if the answer thereto were in the negative, whether the defendant Hogan was the operator *150 of an automobile involved in an accident on said date at or near the intersection of Avenue E and East 42nd Street in the City of Bayonne; that under date of May 11, 1933 defendant Hogan answered the said interrogatory, under oath, with a single word "No"; that he, Piga, was attorney for the plaintiff and was present throughout the trial of the case on September 19, 1934; that although the testimony of the witnesses and the proceedings at the trial were reported stenographically, yet a transcript of the record was never made and that deponent is now informed that the stenographic notes of the reporter had long since been disposed of and are no longer available for transcribing; that there were no eyewitnesses to the happening of the accident, but that one Anton Jablonicky testified for the plaintiff at the trial and stated that while on his way home on the date of the accident he heard a crash, looked and saw timber and the form of an unconscious man lying in the street, that with the aid of one Edward Long he placed the unconscious man in his automobile and then noticed a second body lying on the street about a block away from where the first body was found, that he and Long picked up the second body which was that of a boy and that he took the two unconscious persons to a hospital; that police officer John Stazika testified at the trial for the plaintiff and said that he was visiting the home of his mother on Avenue E in the City of Bayonne at the time of the occurrence of the accident in question, at about 7:50 P.M., that he heard a terrific crash in the street and went out to investigate and found the defendant Hogan in an automobile which had jumped the curb, struck and bent a street sign post and overturned at the intersection of Avenue E and 32nd Street, that he found at the curb near the defendant's automobile a bicycle with a black frame with the two wheels of the bicycle completely demolished, that the defendant Hogan had been drinking, and that he placed the defendant Hogan under arrest and took him to police headquarters; that at the trial of the case another police officer testified that he had questioned Hogan at police headquarters the evening of the accident and that Hogan *151 had stated to him that he did not remember having struck anyone on Avenue E at 42nd Street and had insisted that he was not in that vicinity during that evening. Piga's affidavits further state that it was established by proof at the trial that the body of the man picked up by Jablonicky at the intersection of Avenue E and 42nd Street was identified as that of the decedent Vincent Wegiel and that the body of the boy picked up about a block from the scene of the accident was that of the decedent Michael Wegiel, a 14-year-old boy.
The record does not disclose whether the defendant Hogan testified in his own behalf at the trial. Significantly, however, he filed no answering affidavit controverting the statements contained in the Piga affidavits.
The original complaint filed in this cause was in four counts. The first two counts were against defendant Patrick J. Harrold as owner of the automobile involved in the accident, but the complaint was dismissed as against him at the trial. The third and fourth counts of the complaint were against the defendant Hogan as the driver and operator of the automobile which struck and killed the plaintiff's intestates. The third and fourth counts against the defendant Hogan each contain the following allegation:
"At the time and place aforesaid, said defendant did with wanton, willful and malicious carelessness and negligence, run into and strike the decedent * * * and with full knowledge of his act and in total disregard of the consequences thereof, did drive away from the scene of the accident to a distance about half a mile away."
To the foregoing complaint the only answer of the defendant Hogan was a general denial contained in a single sentence.
By notice dated October 1, 1952, supported by verified petition of the defendant Hogan setting forth his adjudication and discharge in bankruptcy as aforesaid, defendant Hogan moved in the cause for an order permanently enjoining and restraining the plaintiff from taking further proceedings *152 on the judgment, and especially from proceeding with the garnishment under which deductions were being made from the defendant's salary. In answer to that motion, affidavits were filed by plaintiff's attorney, Stephen P. Piga, Esquire, as aforesaid; the matter was heard in the Law Division of the Superior Court, and an order entered January 16, 1953 denying defendant's motion. It is from that order denying defendant's motion that this appeal has been taken.
It is universally held that a judgment resulting from an injury due to simple negligence in driving an automobile is dischargeable in bankruptcy as not being within the exception set forth in the statute. Freedman v. Cooper, supra; Tinker v. Colwell, supra; McClure v. Steele, 326 Mich. 286, 40 N.W.2d 153, 13 A.L.R.2d 160 (Sup. Ct. 1949); Annotation 13 A.L.R.2d 172.
However, to come within the meaning of the exception in the Bankruptcy Act relating to willful and malicious injuries, it is not necessary that there should be personal malevolence or personal malice, toward the injured party. Tinker v. Colwell, supra; McIntyre v. Kavanaugh, 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916).
An act may be willfully injurious without actual ill will toward or positive intent to injure the person harmed. Willful (i.e., voluntary and intentional) conduct imports intent. The element of intent to harm may be supplied by a constructive intention as to the consequences which, entering into the intentional act which produces the injury, the law imputes to the actor regardless of whether or not he intended to harm the person, so that a charge which otherwise would be mere negligence, becomes, by reason of reckless disregard of the safety of the other, a willful wrong. It is the reckless indifference to consequences of the deliberate act in the face of known circumstances and the high degree of probability of producing the harm that stamps the act as willfully injurious rather than as mere negligence. Negligence and willfulness are mutually exclusive terms implying radically different states of mind. Negligence *153 conveys merely the idea of inadvertence as distinguished from premeditation or formed intention. King v. Patrylow, 15 N.J. Super. 429, 433 (App. Div. 1951); In re Lewis, 11 N.J. 217 (1953). Cf. Haucke v. Beckman, 96 N.J.L. 409 (Sup. Ct. 1921); Staub v. Public Service Ry. Co., 97 N.J.L. 297, 300 (E. & A. 1921); Annotation 13 A.L.R.2d 171. Wanton and reckless conduct, i.e., acts done with an utter disregard of the rights and safety of others, may constitute willful and malicious injury to the person and property of another within the meaning of the Bankruptcy Act exempting from discharge liabilities of the bankrupt for willful and malicious injury to the person or property of another. Annotation 13 A.L.R.2d 171.
In Tinker v. Colwell, supra [193 U.S. 473, 24 S.Ct. 508] (a case of criminal conversation), the United States Supreme Court said:
"From the nature of the case the act * * * was wilful, because it was voluntary. That act was unlawful, wrongful, and tortious, and, being wilfully done, it was, in law, malicious. It was malicious because the injurious consequences which followed the wrongful act were those which might naturally be expected to result from it, and which the defendant * * * must be presumed to have had in mind when he committed the offense. `Malice,' in law simply means a depraved inclination on the part of a person to disregard the rights of others, which intent is manifested by his injurious acts. While it may be true that in his unlawful act Freche was not actuated by hatred or revenge or passion towards the plaintiff, nevertheless, if he acted wantonly against what any man of reasonable intelligence must have known to be contrary to his duty, and purposely prejudicial and injurious to another, the law will imply malice."
And the court in that case cites with approval United States v. Reed, C.C., 86 F. 308 (1897), in which it was held that malice consisted in the willfully doing of an act which the person doing it knows is liable to injure another, regardless of the consequences; that a malignant spirit or specific intention to hurt a particular person is not an essential element; and that a willful disregard of what one knows to be his duty, an act which is against good morals and wrongful in and of itself, and which necessarily causes injuries, *154 and is done intentionally, may be said to be done willfully and maliciously so as to come within the exception mentioned in the Bankruptcy Act. The facts in Tinker v. Colwell, supra, are quite different from the facts in the case at bar but the principles there enunciated with respect to willful and malicious injuries have been frequently cited and applied by the courts to entirely different factual situations.
In re Greene, 87 F.2d 951, 953, 109 A.L.R. 1188 (7 Cir., 1937) involved directly the question of whether a judgment for damages because of injuries suffered in an automobile accident was dischargeable by the subsequent bankruptcy of the judgment debtor. The court held that the judgment was not dischargeable because it was based upon willful and wanton conduct of the defendant in the operation of an automobile and stated the following propositions:
"The term `willful and malicious' as used in the Bankruptcy Act in question need not involve actual malice, as we usually think of that term. In fact, actual malice is seldom present in such cases. If an act, wrongful within itself, is done intentionally and in willful disregard of what one knows to be his duty and which does, through necessity, cause an injury to another, it may be said, under the act, to be done willfully and maliciously. Willful and malicious injury, in the Bankruptcy Act, does not necessarily involve hatred or ill will as a state of mind, but arises from a wrongful act, done intentionally, without just cause or excuse. * * * `Wantonly' means without reasonable excuse and implies turpitude, and an act to be done wantonly must be done intentionally and with design, without excuse and under circumstances evincing a lawless, destructive spirit. It is a reckless disregard for the lawful rights of others, such a degree of rashness as denotes a total want of care, or a willingness to destroy, although destruction itself may have been unintentional. * * * Applying to the term `wilful and wanton' the meaning given by our courts and the meaning of the words themselves constituting such term, it seems that an act done `willfully and wantonly' is included in the bankruptcy statute, supra, and any judgment obtained because of such act is not dischargeable by bankruptcy. Such an act must be said to have been done `willfully and maliciously' as contemplated by the statute."
In McClure v. Steele, supra [326 U.S. 286, 40 N.W.2d 156], defendant had driven an automobile over the curb and sidewalk, striking the plaintiff's wife with resulting serious *155 injuries to her. There was a judgment for the plaintiff. Subsequently the defendant was discharged in bankruptcy and the question immediately involved was whether the particular judgment was released by the defendant's subsequent discharge in bankruptcy. The court held the judgment was not released by the discharge in bankruptcy but was based upon a willful and malicious injury to the person of the plaintiff's wife. The court said in part:
"Conduct that is wilful and wanton is different in character from that which is merely negligent * * *. Willful negligence has come to have a settled significance in the law, and has been defined as that degree of neglect arising where there is a reckless indifference to the safety of human life, or an intentional failure to perform a manifest duty to the public, in the performance of which the public and the party injured has an interest. * * * The word `wanton' is defined in Webster's New International Dictionary as reckless, heedless, malicious."
In Tinker v. Colwell, supra, the court remarked by way of dictum that one who negligently drives through a crowded thoroughfare and negligently runs over an individual would not "as we suppose" be within the exception under the bankruptcy statute. The court's remarks, however, dealt with the case of negligence and not with a case of willful, wanton, reckless disregard of the safety of other people.
In Freedman v. Cooper, supra, the court held a judgment based on defendant's negligence in the operation of an autobile was released by the subsequent bankruptcy of the judgment debtor, but in that case the court remarked that there was no showing that the automobile had been operated with that general disregard of human life which is sometimes interpreted as malice.
In Haucke v. Beckman, supra, the court sustained a verdict for punitive damages in an automobile accident because the defendant "exhibited such a wanton and reckless disregard of the plaintiff's rights as to stamp his conduct as willful and intentional," although there was no proof in the case indicating the defendant purposely and intentionally ran down the plaintiff.
*156 In the case at bar, there were no eyewitnesses to the happening of the accident in which the plaintiff's intestates lost their lives, but the proofs at the trial were wholly circumstantial. However, circumstantial evidence may suffice, indeed often is more certain, satisfying and persuasive, than direct evidence. In re Lewis, supra, at page 221.
In the light of the foregoing decisions and definitions, may it be said that the defendant was guilty of inflicting willful and malicious injuries to the persons of the plaintiff's intestates in the absence of any proof of any positive intent or purpose by the defendant to run them down? Here we have the circumstances that the defendant drove and propelled his automobile on a public highway in the City of Bayonne; struck and killed the decedent Vincent Wegiel and his 14-year-old son, Michael; the body of Michael was apparently carried on the defendant's automobile for a distance of approximately a block beyond the point where the accident occurred; defendant failed to stop and render assistance to the injured persons but, on the contrary, continued driving for a distance of some 10 blocks (from 42nd to 32nd Streets) where he lost control of his car; the car jumped the curb, struck and bent the post of a street sign and overturned; and the broken bicycle found by the officer at the scene where the defendant's car overturned offered mute but persuasive evidence of the manner in which the defendant must have been operating his car. In addition, while the defendant denied at the police station that he had been involved in an accident and even denied having been in the vicinity of the place where the accident occurred, yet in the "Agreed Statement in Lieu of Record" presented on this appeal, it is frankly stated that defendant Hogan was the operator of the automobile on the public highway known as Avenue E at or near its intersection with East 42nd Street in the City of Bayonne on December 24, 1931 and that his automobile had struck decedents Vincent and Michael Wegiel, both of whom died as a result of the injuries suffered thereby. And, of course, the jury found against him at the trial.
*157 The act of the defendant in driving his automobile in the manner in which he did drive it on the occasion in question was deliberate, voluntary and intentional. In the sense that it was voluntary and intentional, it was willful. There is no proof that he was actuated by personal malevolence or personal malice toward the two people he killed, but is is not necessary that such elements exist to constitute malice in its legal sense. Where one, with reckless indifference to consequences, performs a deliberate act in the face of known circumstances and the high degree of probability of producing harm, the law imputes to the actor a constructive intention to inflict the injuries resulting therefrom and stamps the act as willfully injurious rather than as mere negligence. King v. Patrylow, supra; In re Lewis, supra.
In driving his automobile upon a public highway in the City of Bayonne at about the hour of 7:50 in the evening, defendant Hogan should have anticipated the existence of other vehicles or traffic upon the street; notwithstanding, he apparently drove and propelled his automobile in a wanton and reckless manner and with an utter disregard of the rights and safety of others; after striking two people on the highway, and carrying the body of one of them for a distance of approximately a block, he failed to stop and render assistance but continued on his way for a distance of some ten blocks until he lost control of his car which jumped the curb and upset. We find that the circumstances of this case support the conclusion that the defendant Hogan, with knowledge that injury would probably result from his conduct and with reckless indifference to the consequences, deliberately drove and propelled his car upon a public highway in such a manner as to inflict death upon two people and was therefore guilty of inflicting "willful and malicious injuries to persons," and that hence his discharge in bankruptcy does not operate to release the judgment against him or to bar further proceedings thereon.
It remains to notice certain objections made by defendant Hogan to proceedings before the trial court on his application for restraint and which terminated in the entry *158 of the order now appealed from. He asserts it was error for the trial court to admit and give consideration to the statements contained in the Piga affidavits. The use of affidavits, however, was entirely proper (R.R. 4:44-4), and in a proper case the court may even direct the affiant to submit to cross-examination under that rule. Much of the matter covered in the Piga affidavits is incorporated in the "Agreed Statement in Lieu of Record." The trial in this matter was had in 1934. The order appealed from is dated January 16, 1953. Piga's affidavit states the impossibility of securing a transcript of the evidence given at the trial in 1934 and in that circumstance we think it was proper for the court to accept the next best evidence available from a party who was present at the trial and who heard the testimony given. Clark v. Hornbeck, 17 N.J. Eq. 430 (Prerog. 1865); Sloan v. Somers, 20 N.J.L. 66 (Sup. Ct. 1843); Kellan v. Akers Motor Lines, Inc., 133 N.J.L. 1 (E. & A. 1945); 20 Am. Jur., Evidence, § 710. In this connection it should be noted that defendant Hogan might have, but did not file any affidavit controverting the statements in the Piga affidavit. His failure so to do is not without significance. Series Publishers, Inc., v. Greene, 9 N.J. Super. 166, 170 (App. Div. 1950); 2 Wigmore on Evidence (3rd ed.), § 285. Nor does it appear that the court's action in receiving the Piga affidavit affected the substantial rights of the parties or was inconsistent with administering substantial justice. R.R. 4:63-1.
And defendant further complains that the statement in the Piga affidavit regarding the interrogatory submitted to defendant before trial and his answer thereto, as mentioned above, constituted error. Again it is to be noted that the defendant Hogan did not see fit to file an answering affidavit controverting the statements in the Piga affidavit. Considering the nature of the inquiry before the court on the defendant's motion for restraint against further proceedings on the judgment, we think it was entirely proper to state the position assumed by the defendant prior to the trial of this cause. In any event, however, we cannot see that any *159 substantial rights were denied the defendant by the court's action in considering the Piga affidavit and the reference therein contained to the interrogatory and the defendant's answer thereto. R.R. 4:63-1.
For the reasons stated, the order appealed from will be affirmed.