**In re DARLING LUMBER, INC. Debtor.**

**Bankruptcy No. 85–07695.**

United States Bankruptcy Court, E.D. Michigan, S.D.

Jan. 15, 1986.

Paul K. Hood, Owosso, Mich., for Old Kent Bank-Central.

George B. Rasch, Flint, Mich., Trustee.

Kenneth W. Kable, Saginaw, Mich., for petitioning creditors.

## MEMORANDUM OPINION REGARDING MOTION OF OLD KENT BANK–CENTRAL FOR RELIEF FROM STAY

ARTHUR J. SPECTOR, Bankruptcy Judge.

### FACTS

In March, 1977, Pacesetter Bank & Trust (now Old Kent Bank-Central) executed a

security agreement with John and Vicki Keeling d/b/a Darling Lumber Co. whereby the bank took a security interest in presently owned and after-acquired accounts receivable, contract rights, chattel paper, general intangibles, inventory, and proceeds of each of the foregoing. A financing statement listing the debtors as "Keeling, John A. and Vicki L., d/b/a Darling Lumber Co." was filed with the Secretary of State and the Register of Deeds for Shiawassee County, on August 8, 1979. On January 23, 1984, the bank entered into a new security agreement with "Darling Lumber, Inc." [1] On March 1, 1984 the bank filed an amendment to the original financing statement, wherein it was noted that the name of the debtor was changed from "Keeling, John and Vicki L. d/b/a Darling Lumber Co." to "Darling Lumber, Inc." On May 17, 1984, the bank filed a continuation statement, however the continuation statement incorrectly listed the debtors as "Keeling, John A. and Vicki L. d/b/a Darling Lumber Co.", even though the business had now been incorporated.

On March 23, 1985, an involuntary petition under Chapter 7 was filed with the bankruptcy court, and the order for relief was entered on June 5, 1985. On September 9, 1985, Old Kent Bank-Central filed a motion for relief from the automatic stay seeking to recover from the trustee proceeds from the sale of inventory in which the bank claims a valid security interest. The motion was objected to both by the trustee and by the petitioning creditors on the ground that the bank had not perfected its security interest.

## ISSUE

Are the amended financing statement (indicating the change of the debtor from a partnership to a corporation) and the subsequent continuation statement sufficient to perfect the bank's security interest in the proceeds of the debtor's property?

## DISCUSSION

There is an abundance of cases which decided whether or not a creditor must file a new or amended financing statement in order to retain a perfected security interest in the debtor's property when the name of the debtor and/or the structure of the debtor was changed. In this jurisdiction, the two major cases are *In re Kalamazoo Steel Process, Inc.*, 503 F.2d 1218 (6th Cir. 1974) and *Continental Oil Co. v. Citizens Trust & Savings Bank*, 397 Mich. 203, 244 N.W.2d 243 (1976). In *Kalamazoo Steel Process* the secured party knew at the time of the transaction that the debtor intended to change its name shortly after entering into the security agreement. Although a financing statement reflecting the original name of the debtor was properly filed, no new financing statement was filed after the change of name. After the debtor filed bankruptcy, the trustee sought to avoid the security interest, arguing that the secured party had a duty to file a new financing statement upon the change of the debtor's name. The Court of Appeals affirmed the bankruptcy court's determination that the creditor's interest was unperfected. The court held that where the secured party knew, prior to the execution of the security agreement and financing statement, that the debtor intended to change its name shortly thereafter, by failing to file an amended financing statement reflecting the name change, it had failed to exhibit the good faith performance required by Mich. Comp.Laws § 440.1203; Mich.Stat.Ann. § 19.1203. The court said that it would make a "farce out of notice filing" if the creditor were allowed to maintain an enforceable interest in the property under these circumstances. *In re Kalamazoo Steel Process, Inc.*, 503 F.2d at 1222.

However, two limiting factors to this opinion should be noted. First, the transaction occurred before the amendments to UCC § 9402 were adopted by the Michigan legislature, and therefore the case does not discuss the operation of Mich.Comp.Laws

---

**1.** Although the date on which the debtor was incorporated was not put in evidence, the debtor's statement of affairs indicates that it commenced business on January 1, 1984.

§ 440.9402(7); Mich.Stat.Ann. § 19.9402(7). Second, the court expressly limited its opinion to a situation where the secured creditor knew before filing the financing statement that the debtor was about to change its name shortly thereafter. It did not decide whether the same rules would apply when a creditor learns of the name change subsequent to filing. *Id.*

The *Continental Oil* case also discussed the necessity for a new filing prior to Michigan's 1978 adoption of the 1972 amendments to Article 9. In that case, Citizens Bank loaned money to a corporation called South Haven Fruit Exchange, which in turn granted the bank a security interest in its then owned and after-acquired inventory. The security interest was properly perfected by filing. Some two years later, South Haven Fruit Exchange amended its articles of incorporation and became Blossom Trail Growers, Inc. Although the amendment was duly noted in the records of the Department of Commerce, no new financing statement was filed with the Secretary of State. About two years after this, the debtor granted a security interest to Continental Oil in all of its present and future inventory, which interest was perfected by filing. After the debtor filed bankruptcy, Citizens Bank applied proceeds on hand in a deposit account of the debtor toward the debt owed on its security interest. Continental then filed an action in state court asserting that the bank had converted assets in which it, Continental, had a valid security interest. The Michigan Supreme Court affirmed a decision of the appeals court holding that the bank's interest was superior to Continental Oil's notwithstanding the fact that the name of the debtor had changed substantially subsequent to the filing of the first financing statement. In so holding, the court noted that Mich.Comp.Laws § 440.9402; Mich. Stat.Ann. § 19.9402 (again, the pre-1978 version) imposed no duty upon the secured party to file a new financing statement when the creditor learns subsequent to the filing that the debtor's name has been changed. The court noted that it was apparently the current practice in the state

that new financing statements were not required in such circumstances and it refused to "engraft a court established requirement upon the provisions of the UCC which regulate commercial transactions within the market place. We leave such action to the legislature." *Continental Oil*, 397 Mich. at 209, 244 N.W.2d 243. Although the court was aware of the proposed amendment to § 9402, it found that the very fact that the amendment was proposed was evidence that a new financing statement was not necessary under the currently prevailing practice.

In the instant case, the bank relies primarily on *Continental Oil* and argues that notwithstanding the change in the entity of the debtor the financing statements on file with the Secretary of State were not so misleading as to cause its security interest to be unperfected. In support of this argument, the bank submitted a copy of an abstract of liens obtained from the Secretary of State after the bankruptcy case was filed. This abstract contained the original financing statement in the name of the Keelings, the amendment, and the continuation statement; thus, the bank submits that the notice given to any subsequent party seeking to inquire as to whether the debtor had entered into any prior security agreements was adequate, that its interest is therefore perfected and not subject to avoidance by the trustee.

The trustee and the petitioning creditors dispute this analysis. First, they argue that the debtor's transition from a partnership to a corporation entailed more than a simple change of name; it resulted in a fundamental change in the debtor as a business entity. Noting that Mich.Comp. Laws § 440.9402(7); Mich.Stat.Ann. § 19.-9402(7), as amended effective January 1, 1979, states in relevant part that "where the debtor so changes his or her name, *or in the case of an organization, its name, identity or corporate structure* so that a filed financing statement becomes seriously misleading, the filing is not effective ..." (emphasis added) the creditors assert that the debtor's change from a partner-

ship to a corporation is so drastic that the failure to file a new financing statement is seriously misleading *per se.* Moreover, they claim neither the amended financing statement nor the continuation statement rectify the defect as a matter of fact. The amendment listed the debtor as the Keelings and indicated the name change in the body of the statement; thus, supposedly, the debtor's corporate name would not be properly indexed. The trustee adds that because the continuation statement incorrectly listed the debtor as the partnership, even if a party obtained that financing statement, a third party would be misled into believing that the debtor was not a corporation.

Finally, the trustee and the creditors take the position that, in light of the court's refusal in *Continental Oil* to establish a requirement that the creditor re-file, the legislature's adoption of U.C.C. § 9402(7) is all the more significant. They interpret its action as an express statement that it wished to change the law so as to require a creditor to monitor the debtor and to re-file when its name or organizational structure changed materially. Therefore, they argue, when both the name and the corporate structure of the debtor changed, the bank had the duty to file a new, accurate financing statement within four months after it learned of the changes and, since it failed to do so, its interest became unperfected.

Neither *Kalamazoo Steel Process* nor *Continental Oil* dealt with the precise situation presented here, since in both of those cases the debtor changed only its name, but was at all relevant times a corporation. Whether the bank (which may file a new financing statement without the debtor's signature pursuant to U.C.C. § 9402(2)(d)) is required to file a new financing statement under the circumstances here is apparently one of first impression in Michigan.[2] A survey of cases from other jurisdictions indicates no clear majority view; cases may be found in support of either position. For example, in *In re McCauley's Reprographics, Inc.,* 638 F.2d 117 (9th Cir.1981), *Citizens Savings Bank v. Sac City State Bank,* 315 N.W.2d 20, 33 U.C.C.Rep. 98 (Iowa 1982), and *Whirlpool Corp. v. Bank of Naperville,* 97 Ill.App.3d 139, 52 Ill.Dec. 215, 421 N.E.2d 1078, 33 U.C.C.Rep. 1792 (Ill.App.Ct.1981), the courts held, in circumstances similar to the case at bar, that the first secured party lost its perfected status as a result of its failure to file a new financing statement reflecting the change in the debtor. On the other hand, in *In re Taylorville Eisner Agency, Inc.,* 445 F.Supp. 665, 24 U.C.C.Rep. 241 (S.D.Ill.1977) and *In re Edwards Equipment Co.,* 46 B.R. 689, 40 U.C.C. 1135 (Bankr.W.D.Okla.1985),[3] it was held that no new financing statement was required. There is, then, no settled law in this area.

**2.** There are other cases in this state decided prior to the adoption of § 9402(7). See, for example, *In re Thermal Barriers, Inc.,* 8 B.R. 294 (S.D.Mich.1981). This case had a fact pattern similar to *Continental Oil,* that is, the secured party obtained a security agreement and filed a financing statement from a corporate debtor, which subsequently changed its name. The trustee argued that the failure to file a new financing statement was seriously misleading under the pre-1978 version of § 9402. The district court, relying largely on the two cases cited above, held that the secured party was under no obligation to file a new financing statement upon learning of the debtor corporation's change of name. Accordingly, it held that the creditor's security interest was valid.

See also *In re Gac,* 11 U.C.C.Rep. 412 (Bankr. W.D.Mich.1972). There, the debtor was a woman whose name changed upon her obtaining a divorce. The bankruptcy court held that the secured creditor was not obligated to file a new financing statement, even though it was aware of the debtor's name change.

**3.** The *Edwards Equipment Co.* case involved a fact pattern almost identical to the case at bar. The court there held, on the basis of the Oklahoma version of § 9-402(8), that the financing statements on file were not seriously misleading. The court added in *dictum* that there was no indication whether the debtor's change of name from "Edwards Equipment Co." to "Edwards Equipment Co., Inc." resulted from an incorporation of the debtor's business. If so, the court expressed "grave doubts" that it would reach the same result. As the foregoing discussion indicates, we do not think that the question of whether a name change in these circumstances is seriously misleading is properly resolved by an unyielding legal rule.

■ However, the parties have apparently failed to recognize that the determination of whether financing statements are seriously misleading is essentially a question of fact which must be decided on a case-by-case basis. *In re Glasco, Inc.*, 642 F.2d 793, 796 (8th Cir.1981); *In re West Coast Food Sales, Inc.*, 637 F.2d 707 (9th Cir.1981); *In re Swati, Inc.*, 54 B.R. 498, 501 (Bankr.N.D.Ill.1985); *In re Sounds Distributing Corp.*, 42 B.R. 274, 39 U.C.C. Rep. 703 (Bankr.W.D.Pa.1984). "When the name of the debtor has been erroneously listed on the financing statement, the dispositive question is usually whether or not a reasonable search under the debtor's true name would uncover the filing. If so, it is assumed that the searcher is on notice to inquire further to discover the correct identity of the debtor." *In re McCauley's Reprographics, Inc.*, *supra*, 638 F.2d at 119 (citations omitted).

The nature of the inquiry that courts must engage in was well-stated in *In re McGovern Auto Specialty, Inc.*, 51 B.R. 511, 513, 41 U.C.C.Rep. 1101, 1105 (Bankr. E.D.Pa. 1985):

> The cases adjudicating the effects of improper names on financing statements are legion and they arrive at widely divergent results. The apparent unpredicability (sic) of the holding of these cases is often attributable to an insensitivity to the principle that these decisions are—or should be—based on determinations other than the mere discrepancy between two names. The decisions should not be predicated on a sterile and abstract comparison between two names but rather on "whether a reasonable searcher would find the financing statement or would be put on notice to inquire elsewhere about it." The disparity in the results in the cases is spawned by a concatenation of factors surrounding the differences in the names rather than a mere "conclusion of law" on the difference between such names. Courts failing to recognize this basis for adjudicating an issue of

this sort couch the essence of their decision as a "conclusion of law" and ignore the essentially factual nature of the inquiry. Such a method fails to pay proper heed to the factual determination mandated by § 9402(h) on whether the error at issue is "seriously misleading." The resolution of the question cannot be made simply by comparing two names, but must be settled with an eye toward the intended operation of the UCC indexing system in which the errors are manifest. A reasonable searcher properly using the index is looking for the name of the debtor amid a host of similar names. The system may contain hundreds or millions of names, depending on the size of the index. The extent to which a reasonable searcher may correctly identify an erroneous listing as that of the debtor is dependent, of course, on the size of the index. Analogizing the UCC index to a telephone book is apt. Searching under an erroneous name would be much more difficult with the Manhattan phone book than with an eight page phone book for some rural county.

(Citation omitted).

Therefore, we examine whether third parties, such as the trustee or petitioning creditors, would have been put on sufficient notice of the security interest and the status of the debtor from a lien search. Since the parties have stipulated to all material facts, the only question is whether the documents on file were seriously misleading. Thus, we may proceed as if the parties had filed cross-motions for summary judgment. We have the benefit of having the results of two lien search requests wherein the parties sought any financing statements filed under the name "Darling Lumber, Inc.". The first was submitted by the trustee to the Secretary of State on June 28, 1985; the second, by the bank, through an anonymous [4] agent on October 8, 1985. Both requests reaped the same

---

**4.** In actuality, the lien search request was not truly anonymous. It was submitted by one "Bonita L. Snyder" without any reference on the request form that she was an agent of the mov-

ant. For the purpose of this evaluation, this request will be deemed to be that of a stranger to the case.

result. Each received copies of the original financing statement noting "Keeling, John A. & Vicki L., d/b/a Darling Lumber Co.", (# B09218); the amendment, (# B520310), and the continuation statement (# B548308). Both the amendment and the continuation statement refer back to the original 1979 statement (# B092128). Additionally both the trustee and the bank indicated in their respective briefs that they had inquired into the lien search procedure utilized by the Secretary of State. Both report that the check is done manually, not by computer, and that slight variations in name are usually picked up in a search request.[5]

■ Since the parties' searches each yielded the same results, we find that the financing statements produced would be provided to any third party seeking to determine whether the debtor had granted any security interests. We therefore conclude that the documents on file provide reasonable notice of both the existence of the security interest and the status of the debtor, ergo the statements on file were not seriously misleading. Accordingly, we hold that the bank's interest was perfected at the time the involuntary petition was filed.

■ We decline to adopt the position advocated by the trustee and the petitioning creditors that a creditor *must* file a new financing statement whenever a debtor changes from a proprietorship or partnership to a corporation. First, simply as a matter of statutory construction, the UCC does not mandate that a new statement be filed whenever there is a change in the structure of a debtor. Section 9–402(7) requires a new statement only when the change renders the existing financing statement "seriously misleading". If that condition is not met, then there is no need to re-file. As the court noted in *In re Edwards Equipment Co., supra,* "the em-

phasis on the Uniform Commercial Code is ... on commercial realities rather than on corporate technicalities" *Id.* at 691 (citation omitted). Since, as noted above, we find that a creditor doing a lien·search would have been on actual notice of Old Kent Bank's security interest and the identity of the debtor despite the bank's failure to completely observe the "corporate technicalities", it would be inappropriate to hold that a change in the entity that is the debtor is seriously misleading as a matter of law.

Moreover, we do not interpret the legislature's adoption of the 1972 amendments to Article 9 to require that a new financing statement be filed each and every time that a debtor changes its organizational structure. As noted above, a proper reading of the statute does not mandate that result, and like the Michigan Supreme Court in *Continental Oil,* we decline to impose a standard which is not expressed in the statute. We find nothing in *Continental Oil* to persuade us that the Michigan Supreme Court would require a new financing statement in the case at bar. A flat rule that a new financing statement must be filed whenever a debtor incorporates might be easier to apply, but that standard is not supported by a plain reading of the statute or the existing law in this jurisdiction.

For the foregoing reasons, we hold that the financing statement and subsequent documents on file with the Secretary of State were not so seriously misleading as to require the bank to file a new financing statement under § 9–402(7). Accordingly, the bank retains a valid security interest in the proceeds from the sale of the debtor's assets which were subject to the security interest. As the trustee has conceded that the estate has no equity in the proceeds if the bank's lien is enforceable, there is no reason not to grant summary judgment to the bank on its motion for relief from the automatic stay.

---

5. Of course, the briefs of parties are not admissible as evidence in this proceeding, nor have the parties submitted any affidavit by the Secretary of State or a written guideline of their procedures. However, statements of the parties made in their briefs may be treated as concessions or admissions on a point not properly in evidence. For the purposes of this discussion, then, it will be assumed that the search process is substantially as is described in the briefs.

Upon presentation, an order consistent with this opinion will be entered.