In re Ronald A. WALKER, Debtor.

In re Richard A. D'AGOSTINO, Debtor.

OXFORD VIDEO, INC., Plaintiff,

v.

Ronald A. WALKER, Defendant.

OXFORD VIDEO, INC., Plaintiff,

v.

Richard A. D'AGOSTINO, Defendant.

Bankruptcy Nos. 88–11850, 88–11851.
Adv.Nos. 89–1129, 89–1130.

United States Bankruptcy Court,
E.D. Michigan, S.D.

Aug. 31, 1990.

Stanley T. Dobry, Warren, Mich., for plaintiff.

Carl L. Bekofske, Flint, Mich., for defendants.

## MEMORANDUM OPINION ON DISCHARGEABILITY OF DEBT

ARTHUR J. SPECTOR, Bankruptcy Judge.

The issue in these consolidated adversary proceedings is whether a creditor may be considered as "listed" or "scheduled" for purposes of 11 U.S.C. § 523(a)(3), notwithstanding the fact that the debtors' matrices and schedules list the creditors at an incorrect address.

On August 5, 1988, Ronald A. Walker and Richard A. D'Agostino ("Debtors" or "Defendants") filed their voluntary petitions for relief under Chapter 7 of the Bankruptcy Code. The deadline in these cases for filing a complaint to determine the dischargeability of a debt under § 523(a)(2), (4) or (6) was November 7, 1988. The Debtors received their discharges on November 8, 1988. The Walker case was closed as a no-asset estate on November 9, 1988. The D'Agostino case technically remains open, although the trustee filed a no-asset report on October 10, 1988. The Clerk sent a notice to creditors in each case stating that "[t]here appear to be no assets at this time from which payment may be made to creditors. Do not file a proof of claim until you receive notice to do so." No subsequent notice was sent in either case.

On April 18, 1989, Oxford Video, Inc. ("Plaintiff") filed an adversary proceeding against each of the Defendants, alleging that the debt owed to it and scheduled by the Defendants was non-dischargeable under 11 U.S.C. § 523(a)(3), (4) and (6). The Plaintiff alleged in its complaints that the Defendants, who rented the Plaintiff's videotapes to the public from a pizza parlor which they operated, had breached an agreement with the Plaintiff to forward the rental receipts to the Plaintiff. The Defendants denied the substantive allegations. At the conclusion of the Plaintiff's opening statement, the Defendants moved for dismissal on the ground that the complaints were filed outside the time limit set by Bankruptcy Rule 4007(c) and, as the debt had been listed at the inception of each case, the Plaintiff had no cause of action under § 523(a)(3). In the course of argument, it was discovered that the Defendants' Schedules A–3 and mailing matrices did not accurately state the Plaintiff's address. The Plaintiff is located at 153 S. Washington, Oxford, Michigan, 48051. The Debtors, however, listed the address as "153 *N.* Washington, Oxford, Michigan, 48051." The Plaintiff offered to prove that it never received notice of either bankruptcy case in time to file complaints before the deadline under Rule 4007(c) had passed. Accordingly, the Defendants' motion was denied and proofs were received. The Court must now decide whether the debts were "scheduled" or "listed" for purposes of 11 U.S.C. § 523(a)(3), notwithstanding the fact that the schedules and matrices bear an incorrect address.

The following are the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. The Court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

## DISCUSSION

Section § 523(a)(3) provides in pertinent part that a debt is not discharged if it was

neither listed nor scheduled under § 521(1) ... in time to permit—

(B) If such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request[.]

In order for the Plaintiff to prevail in this case, then, the Court must conclude: (1) that the debts are non-dischargeable under § 523(a)(2), (4) or (6);[1] (2) that the debts were not listed or scheduled; and (3) that the Plaintiff did not have notice or knowledge of the bankruptcy cases in time to seek a determination of dischargeability within the specified time frame.[2]

■ With respect to the first of these issues, we note that the parties had an express understanding that the videotape rental receipts were property of the Plaintiff and that the Defendants were to account for such receipts and pay them over to the Plaintiff. The Defendants nevertheless comingled these funds with their own to the eventual prejudice of the Plaintiff. We conclude that the Defendants intentionally comingled these rental receipts with their own funds, without just cause or excuse, and with the knowledge that their action was "substantially certain to result in harm" to the Plaintiff. *In re Woolner,* 109 B.R. 250, 254 (Bankr.E.D.Mich.1990). The Defendants' debt to the Plaintiff, therefore, is of a type which is ordinarily non-dischargeable under § 523(a)(6).

Turning our attention to the next element essential to a determination of non-

---

**1.** If a cause of action does not exist under § 523(a)(2), (4) or (6), there is no cause of action under § 523(a)(3). *See In re David,* 106 B.R. 126, 129 (Bankr.E.D.Mich.1989) ("[T]o find out if § 523(a)(3)(B) applies, one still has to determine whether the debt was one that *would have been* non-dischargeable under § 523(a)(2), (4) or (6)." (emphasis in original)).

**2.** Because these were no-asset cases, the time within which to file a proof of claim never expired. The Plaintiff may therefore still file timely proofs of claim against the Debtors. *See In re David,* 106 B.R. at 129.

dischargeability, § 521(1) requires a debtor to "file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities...." Pursuant to Bankruptcy Rule 1007(a)(1), the list of creditors must include each creditor's address. Bankruptcy Rule 1007(b), in turn, provides that the schedules of assets and liabilities are to be "prepared as prescribed by Official Form No. 6...." This official form calls for disclosure of the full address for each creditor.

■■■ The law therefore clearly requires that the debtor set forth the address of his creditors in his schedules and matrices, and the failure to state the correct address may result in a determination that the debt has not been scheduled. *See Ford Motor Credit Co. v. Weaver*, 680 F.2d 451, 457 (6th Cir.1982).[3] The fact that the Plaintiff's address was incorrectly stated, however, does not mandate the conclusion that the debt was not duly scheduled; as the Sixth Circuit noted in *Weaver*,

> In deciding whether a debt is duly scheduled, the extent to which the schedule fulfills the [Bankruptcy Act's] purpose ... is a significant factor. The purpose of the scheduling requirement is to enable creditors to receive timely notice of bankruptcy proceedings which may affect their interests. Consequently, an error in listing a creditor's residence or address does not necessarily cause the debt to not be duly scheduled.

*Id.* at 456 (citation omitted). So long as an inaccuracy in the listed address is not so serious as to defeat the objective of providing notice to the creditor, then, the debt will be deemed properly scheduled. *See id.* at 456–57; *In re Adams*, 734 F.2d 1094, 1098 (5th Cir.1984) ("[I]f a debtor lists in-

correctly the name or address of a creditor in the required schedules, *so as to cause the creditor not to receive notice*, that creditor's debt has not been 'duly scheduled'...." (emphasis added)); *cf. In re Frankina*, 29 B.R. 983, 985 (Bankr.E.D. Mich.1983) ("A creditor is properly scheduled if he is scheduled in a manner that is reasonably calculated to provide him with notice of the bankruptcy proceeding.")

■■■ Based on the foregoing authorities, we conclude that a creditor has been duly scheduled and listed if the address provided by the debtor is sufficiently accurate to permit delivery by the United States Postal Service to the appropriate party.[4] Where a creditor challenges the accuracy of a listed address, the burden should properly fall upon the creditor to establish that the address provided by the debtor was so incorrect as to fall short of this threshold. *See Hill v. Smith*, 260 U.S. 592, 595, 43 S.Ct. 219, 220, 67 L.Ed. 419 (1923); *State of Connecticut v. Duncan*, 37 Conn.Super. 825, 438 A.2d 1212, 1214 (1981); *King v. Harry*, 131 F.Supp. 252, 254–55 (D.D.C. 1955); *In re Brown*, 27 B.R. 151, 153 (Bankr.N.D.Ohio 1982); 3 *Collier on Bankruptcy*, ¶ 523.13[6] (15th ed.1989). *Contra In re American Properties, Inc.*, 30 B.R. 239, 10 B.C.D. 879 (Bankr.D.Kan.1983) (holding that the debtor had the burden of proving that the address used was sufficient for the purpose intended). If the creditor is able to show that the address was inadequate for the purpose intended, the burden then shifts to the debtor to show that, notwithstanding the incorrect address, the "creditor had [timely] notice or actual knowledge of the case." 11 U.S.C. § 523(a)(3). *Hill v. Smith*, 260 U.S. at 595, 43 S.Ct. at 220; *United States v. Bridges*,

---

**3.** Although the court in *Weaver* was interpreting the provisions of the Bankruptcy Act of 1898, as amended, its reasoning is relevant to cases decided under the Code; the requirements under Bankruptcy Rule 1007 with respect to listing the addresses of creditors are substantially the same as those set forth under the corresponding section of the Act. *See* 11 U.S.C. § 25(a)(8) (repealed).

**4.** This pragmatic approach is comparable to that used in Uniform Commercial Code cases to de-

termine whether inaccuracies in a financing statement are so significant as to render its filing ineffective. Rather than applying a rigid, "unyielding legal rule," *In re Darling Lumber, Inc.*, 56 B.R. 669, 672 n. 3 (Bankr.E.D.Mich. 1986), the courts instead inquire as to whether "a reasonable search ... would uncover the filing." *Id.* at 673 (quoting *In re MacCauley's Reprographics, Inc.*, 638 F.2d 117, 119 (9th Cir. 1981).

894 F.2d 108, 111 (5th Cir.1990); 3 *Collier on Bankruptcy, supra.*

■ After due consideration of the evidence adduced at trial, we conclude that the Plaintiff has failed to establish that the error in listing its address was so serious as to thwart delivery by the Postal Service. The only evidence which the Plaintiff submitted on this issue was the testimony of its president, Noreen Addison, to the effect that the Plaintiff never received the notices in question. However, Ms. Addison conceded that, during the time period when the notices of bankruptcy would likely have been delivered, she was frequently out of town.[5] No evidence was submitted by the Plaintiff as to its internal procedures regarding receipt and sorting of mail. *Compare In re Dodd*, 82 B.R. 924, 929 (N.D.Ill. 1987) ("[D]irect testimony of nonreceipt, *particularly in combination with evidence that standardized procedures are used in processing claims,* would be sufficient to support a finding that the mailing was not received...." (emphasis added; citations omitted)). Although offered the opportunity to supplement the proofs, the Plaintiff also failed to introduce evidence that the Postal Service would or could not properly deliver the notice of bankruptcy in this case. Ms. Addison acknowledged that she received both notices of discharge which were mailed by the Clerk to the same incorrect address that the Clerk used in mailing the original notices of bankruptcy.[6] This strongly suggests that the N. Washington address was sufficient. *See In re STN Enterprises, Inc.*, 94 B.R. 329,

334 (Bankr.D.Vt.1988) ("The presumption [of receipt] in this case is stronger ... because [the creditor] had received other mailings with the same incorrect zip code both before and after the Bar Date notice was mailed."). The fact that neither file reflects the return of the incorrectly addressed envelope is further support for the conclusion that the defective address proved to be no impediment to delivery.[7] *See In re Longardner & Assoc., Inc.*, 855 F.2d 455, 460 (7th Cir.1988), *cert. denied*, 489 U.S. 1015, 109 S.Ct. 1130, 103 L.Ed.2d 191 (1989) ("[T]he presumption of delivery ... is strengthened in this case by the fact that the notice was never returned to the clerk's office...." (citation omitted)); *In re Lee & Sons, Inc.*, 95 B.R. 316, 319 (Bankr. M.D.Pa.1989); *Freedman v. Cooper*, 126 N.J.L. 177, 17 A.2d 609, 611 (1941). We therefore hold that the debts at issue were duly scheduled in both bankruptcy cases.[8]

For the reasons stated, a judgment will enter in favor of each of the Defendants in their respective adversary proceedings.

---

5. Her daughter, who was in charge of the store during Ms. Addison's absences, did not testify.

6. That these correspondences were properly delivered is not surprising given the fact that, as the Plaintiff concedes, Oxford is a small town. The Official Transportation Map for the State of Michigan, which is disseminated by the Michigan Department of Transportation, lists Oxford's population as 2,746.

7. The Clerk mailed notices of the commencement of the bankruptcy cases on August 8, 1988. In the D'Agostino case, a second notice was mailed on September 14, 1988 because the meeting of creditors had to be rescheduled. The Clerk's routine is to use the debtor's mailing matrix to address the notices of bankruptcy. It is the practice of the Postal Service to return to the Clerk any envelopes which are undeliverable. Furthermore, it is the Clerk's custom to retain a returned envelope in the court file and to send a separate notice to the debtor's attorney that the envelope was returned as undeliverable. The same or similar procedure is followed by the clerks in other districts as well. *See, e.g., In re Adams*, 734 F.2d 1094, 1098 n. 5 (5th Cir. 1984).

8. Because the Plaintiff has failed to establish that the debts were not duly scheduled, there is no need to address whether the Plaintiff had notice or actual knowledge of the bankruptcy filings.